CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED 2012

JAN 09 2012

JULIA C. DUDLEY, CLERK
BY:
  DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| **ANTHONY HALL,** | ) | Case No.: 7:10-cv-00393 |
| | ) | |
| Plaintiff, | ) | **MEMORANDUM OPINION** |
| | ) | |
| v. | ) | By: James C. Turk |
| | ) | Senior United States District Judge |
| **MR. HOPKINS,** *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff Anthony Hall, a Virginia inmate proceeding *pro se*, brought this civil rights complaint against Keen Mountain Correctional Center ("KMCC"), its medical personnel, and a prison guard, alleging, *inter alia*, they failed to adequately provide for his medical needs. The Court has previously terminated KMCC, the Virginia Department of Corrections ("VDOC"), and the prison guard, Lt. Cox, as Defendants. Before the Court is remaining Defendants' Gerard T. Hopkins, Deborah Ball, Mavis Boyd, Carey Hawks, Wanda Shelton, and Eugene Whited (collectively, the "Medical Defendants")'s Motion for Summary Judgment (ECF No. 51). In response to the Medical Defendants' dispositive motion, Plaintiff Hall was served with a Roseboro notice (ECF No. 53). Hall subsequently filed a Motion for Extension of Time to Respond, which this Court granted (ECF Nos. 54, 56). Plaintiff then filed a Response (ECF No. 55) and the matter is now ripe for decision. For the reasons discussed below, the Defendants' Motion (ECF No. 51) is **GRANTED**.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The complaint in this case is lengthy and names several defendants. A liberal reading of the Plaintiff's complaint (ECF No.1), declaration in support of his motion for injunctive relief (ECF

1

No. 1-2), verified statement (ECF No. 2), and amendments to his complaint (ECF Nos. 15, 20) gleans the following facts, presented here in the light most favorable to him.[1] *See* Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979). Despite being limited to those allegations pertaining to the Medical Defendants, what follows is a necessarily lengthy recitation of the facts. Plaintiff Hall is an inmate at KMCC. He was previously an inmate at Sussex II State Prison ("Sussex II"). While at Sussex II, medical staff found he had significant podiatric problems, including chronic pain. *See* Pl.'s V.S. at 22–23. In 2003 and 2006, the Plaintiff had surgeries to correct deformities of certain of his toes and remove bunions. Hopkins Aff. ¶ 9. On December 7, 2005, Sussex II medical staff also requested that correctional officers grant Plaintiff Hall a ground-level, bottom tier cell assignment and a bottom bunk bed accommodation on account of his medical problems. *See* Pl.'s V.S. at 21. In 2007, while still at Sussex II, Plaintiff requested that he be transported to an outside orthopedic clinic to be fitted with special orthopedic footwear. Plaintiff's request was denied by his primary care doctor at Sussex II because Mr. Hall's orthopedic surgeon did not indicate that special shoes were necessary. *See* Inmate Req., attached as Ex. B to Whited Aff., ECF No. 37-5, at 11. Plaintiff was advised that he could purchase special athletic shoes from the commissary. *Id.*

At some point thereafter, Plaintiff was relocated to KMCC, where his instant troubles began. Plaintiff was seen by Defendant Ball on March 10, 2010 and requested a prescription for orthopedic shoes, which she refused to issue. Pl.'s V.S. at 19. Instead, she scheduled him for a follow up appointment on March 24, 2010. At the March 24 appointment, Defendant Ball

---

[1] The Plaintiff's formal complaint, although spanning 30 pages and cloaked in legal jargon, is largely bereft of actual factual allegations. As such, the Court turns to these other documents, most filed concomitantly with the complaint, to gain an understanding of the facts alleged.

2

offered to prescribe the Plaintiff Neurontin[2] for his pain, which he refused. Ball Aff. ¶ 9. Ball then advised Plaintiff Hall that he could purchase ibuprofen from the prison commissary. Pl.'s V.S. at 20. On May 20, 2010, Plaintiff filed an informal complaint alleging, conclusorily, that KMCC was failing to provide him adequate medical treatment. *Id.* at 27. On May 26, Plaintiff filed an informal request asking for a bottom bunk assignment and orthopedic shoes. *Id.* at 26. Several days later, Defendant Whited responded to both Plaintiff's May 20 and May 26 correspondence, instructing Hall that he could purchase boots from the commissary, and that since Hall had never requested a bottom bunk since he had been at KMCC, instructed Hall to sign up for sick call in accordance with procedure. *Id.* at 26–27. On June 3, 2010, Plaintiff filed a regular grievance, complaining that medical officials violated his constitutional rights by refusing to grant him a bottom bunk assignment, transportation to an "Orthopedic shoe shop," and the opportunity to see a specialist. *Id.* at 12. This grievance was not accepted and in fact returned to him because it was construed as a request for services, and the Plaintiff was advised to sign up for sick call. *Id.* at 13. He received the same response to a June 13 grievance. *Id.* at 28.

On June 7, 2010, Plaintiff followed up on his June 3 grievance by filing an informal complaint restating his concerns and emphasizing that the delay in getting medical attention was causing him pain, suffering, and emotional distress. *Id.* at 30. Prison authorities again told him to submit a sick call request. *Id.* The same day, Plaintiff submitted another Informal Request, where he apparently attempted to request a sick call. *Id.* at 33. Defendant Whited responded by instructing him to drop his request in the medical box during meal time or hand it to a nurse

---

[2] Neurontin is the brand name of a drug containing the active ingredient gabapentin. Gabapentin is used, *inter alia*, for the treatment of neuropathic pain. Nat'l Inst. of Health, U.S. Nat'l Library of Medicine, *Gabapentin*, PUBMED HEALTH (Jul. 15, 2011), http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0000940/.

3

during the morning pill call. *Id.* Plaintiff filed another informal complaint on June 28, 2010. *Id.* at 7. This complaint was rejected, and Plaintiff timely filed a regular grievance on July 8, 2010, which was also rejected. *Id.* at 6. Plaintiff appealed to the next and final level of administrative remedy, and was again rebuffed. *Id.* at 3.

On July 14, 2010, Plaintiff filed an emergency grievance complaining of foot pain and requesting medical attention "as soon as possible." *Id.* at 17. Defendant Hawks responded less than an hour later, directing Hall to sign up for sick call in the morning. *Id.* Plaintiff filed an almost-identical emergency grievance five days later, on July 19, 2010. *Id.* at 16. This time, Defendant Boyd responded that his condition was not life-threatening and that he should sign up for sick call in the morning. *Id.*; Boyd Aff. ¶ 6.

A similar scenario played out on August 5, 2010, with the Plaintiff filing an emergency grievance complaining of his foot pain and Defendant Shelton responding that he needed to sign up for sick call. Pl.'s V.S. at 24; Shelton Aff. ¶ 6. Defendant Shelton also examined Plaintiff Hall on September 20, 2010 for his complaint of foot pain. She recommended that he be put in medical observation until he was seen by a physician. Shelton Aff. ¶ 7. Meanwhile, on July 21, the Plaintiff filed an informal request[3] with prison authorities requesting an immediate sick call appointment for foot pain. Pl.'s V.S. at 11. He was again told to submit a sick call request in the morning. *Id.*

Defendant Hawks saw Plaintiff on September 22, 2010 for his complaint of foot pain and Hawks recommended he be seen by Defendant Ball. Hawks Aff. ¶ 7. Plaintiff Hall was seen again by Defendant Ball on September 22, 2010. She prescribed ibprofuen and a steroid, but

---

[3] An "Informal Request" is a request for services and information. It is different than an "informal grievance" in that it is not part of the administrative remedy process at KMCC.

4

again refused to refer him to a provider outside the prison. *See* Ball Aff. ¶ 10; Compl. & Treatment Form, attached as Ex. B-2 to Whited Aff., ECF No. 37–4, at 7.

On October 14, 2010, Plaintiff was seen by Defendant Dr. Hopkins. Dr. Hopkins evaluated the Plaintiff and ordered a radiograph of his feet. The x-ray was completed at an outside medical clinic. Hopkins Aff. ¶ 16. Upon evaluating the radiographs and accompanying report, Defendant Ball again placed the Plaintiff on a list to be seen by Dr. Hopkins. Ball Aff. ¶ 12. Plaintiff's troubles continued into November, where again Defendant Whited responded to his informal requests with a direction that he should sign up for sick call in order to see the doctor. *See* Inf. Req. Forms, attached to Pl.'s Supp. Compl., ECF No. 20, at 14–15. Plaintiff apparently did sign up for sick call in accordance with Whited's instructions, and on November 24, 2010, saw Defendant Shelton during sick call. Shelton placed Hall's name on the list to see Defendant Hopkins. Shelton Aff. ¶ 9.

On December 14, 2010, Plaintiff saw Dr. Hopkins and again requested orthopedic shoes. Hopkins Aff. ¶ 17. Dr. Hopkins found that the Plaintiff had a "mild foot deformity," but concluded that it was not severe enough to warrant a referral or the prescription of orthopedic footwear. *Id.* However, Dr. Hopkins did not prevent the Plaintiff from purchasing special shoes from the commissary, albeit at his own expense. *Id.* ¶ 19.

This action was originally filed in the Clerk's Office on September 3, 2010. Plaintiff's original Complaint alleged that the Defendants did not properly treat his foot problems, failed to provide him with orthopedic shoes, refused to refer him to an outside specialist, and also refused to authorize treatment by an outside orthopedic specialist. On January 13, 2011, the Magistrate Judge granted the Plaintiff's motions to amend his original Complaint. *See* ECF No. 22. The

Medical Defendants brought a Motion for Summary Judgment on June 23, 2011 (ECF No. 51), which is presently before the Court.

## II. STANDARD OF REVIEW

"[T]he function of a motion for summary judgment is to smoke out if there is any case, i.e., any genuine dispute as to any material fact, and, if there is no case, to conserve judicial time and energy by avoiding an unnecessary trial and by providing a speedy and efficient summary disposition." Bland v. Norfolk & S. R. R. Co., 406 F.2d 863, 866 (4th Cir. 1969). In considering a summary judgment motion, the Court views the facts, and any inferences to be drawn from those facts, in the light most favorable to the nonmoving party. *See* United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam). Summary judgment is appropriate where the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists where reasonable jurors could find that the nonmoving party is entitled to a verdict in his favor. Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 252 (1986). The moving party bears the initial burden of showing the lack of a genuine dispute as to the material facts in the case. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once a motion for summary judgment is properly made and supported, however, that burden shifts to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). A moving party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find in favor of the non-movant. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).

## III. DISCUSSION

### A. Deliberate Indifference to Prisoner's Medical Needs

The Plaintiff here brings a claim under 42 U.S.C. § 1983 for violation of his civil rights because the medical staff at KMCC did not prescribe him orthopedic shoes or refer him to an orthopedic specialist despite his chronic pain and repeated requests that they do so. In order to state a cognizable Eighth Amendment claim for denial of medical care, a plaintiff must allege acts sufficient to evince deliberate indifference to a serious medical condition. *See* Estelle v. Gamble, 429 U.S. 97, 104 (1976). To establish deliberate indifference, a plaintiff must present facts tending to demonstrate that each of the named Defendants consciously disregarded a substantial risk of serious harm. Farmer v. Brennan, 511 U.S. 825, 839–40 (1994). In order to establish a claim such as the one Plaintiff Hall brings here, "the [medical] need must be both apparent and serious, and the denial of attention must be both deliberate and without legitimate penological objective." Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999) (citing Martin v. Gentile, 849 F.2d 863, 870–71 (4th Cir. 1988)). Mere malpractice on the part of medical personnel is insufficient to state a claim under the Eighth Amendment, Estelle, 429 U.S. at 106, and questions of medical judgment are not generally subject to judicial review. Russell v.Sheffer, 528 F.2d 318, 319 (4th Cir. 1975) (per curiam). Deliberate indifference is a two-part analysis with a subjective and an objective component. Estelle, 429 U.S. at 104. The Court will analyze the objective component first and then turn to the subjective component.

1. **Serious Medical Need**

The Defendants argue that the Plaintiff's complaint must fail because he does not allege that a sufficiently serious medical need to come within the ambit of the Fourteenth Amendment. The Constitution is only concerned with deliberate indifference to a prisoner's medical needs where those needs are "serious." Hudson v. McMillian, 503 U.S. 1, 20 (1992); Estelle, 429 U.S. at 105. Whether or not an inmate's medical needs are "serious" is an objective measure, not a

7

subjective one. Estelle, 429 U.S. at 104. The Fourth Circuit defines a serious medical need as "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) (citation omitted).[4] In a broad sense, the injuries for which the Plaintiff was seeking medical attention were the podiatric problems arising out of and relating to his surgery. This is not in dispute. Defendants admit that the Plaintiff has been diagnosed with bilateral *hallus valgus* and *pen planus*. Defs.' Mot. for Summ. J. at 3. The more nuanced question for this Court, then, is the level of generality at which the objective prong applies—that is, have the specific medical needs for which the defendant seeks a legal remedy been diagnosed by a physician? Or, alternatively, are they so sufficiently obvious that a lay person would recognize the necessity for a doctor's attention? The crux of Plaintiff's claim is that he was denied appropriate medical treatment—that is, prescriptive orthopedic shoes and a referral to an orthopedic specialist outside the penal system—in spite of the great pain due to those same medical issues. The record before the Court reveals that Mr. Hall waged a prolonged campaign to try to obtain a prescription for orthopedic shoes and an orthopedic referral. The justification for these requests was the Plaintiff's chronic foot pain. KMCC's own physician, Dr. Hopkins, a Defendant in this case, admits that he diagnosed Mr. Hall with chronic foot pain. Hopkins Aff. ¶ 15. Because Hall's chronic foot pain has been diagnosed by a physician, the Court finds that it constitutes a "serious medical need" that satisfies the objective prong of the deliberate indifference test.

---

[4] Iko is one of the leading cases in the Fourth Circuit on the serious medical need prong of deliberate indifference, and postdates the cases in the Defendants' brief by more than a decade. The Court ordinarily prefers to let counsel try their own cases and make their own strategic decisions, but is at a loss as to why Defendants do not attempt to distinguish or even recognize the existence of this precedent. This is particularly unhelpful in a *pro se* case such as this where counsel's opponent is not learned in the law and is less likely to be able to provide such citations himself.

8

## 2. Deliberate Indifference

However, a putative plaintiff must also meet the subjective prong of the analysis. The Plaintiff must show that each of the Defendants knew of and disregarded the risk posed by the Plaintiff's objectively serious medical needs. Farmer, 511 U.S. at 837. But "negligence or malpractice on the part of ... doctors in missing [a] diagnosis does not, by itself, support an inference of deliberate indifference." Johnson v. Quinones, 145 F.3d 164, 166 (4th Cir.1998). The Fourth Circuit has summed up the test thusly: in order to meet the subjective prong of the deliberate indifference inquiry, an inmate-Plaintiff must show (1) that the Defendant had actual knowledge of the risk of harm to the Plaintiff; *and* (2) the Defendant recognized that his or her actions were insufficient to mitigate that risk of harm. Iko, 535 F.3d at 241. Here, it is clear that the Defendants knew of Hall's medical condition. He filed a number of complaints and grievances through the prison administrative process, and each of the defendants either responded to or treated him for his foot condition.

However, Hall does not bring forth any evidence tending to show that any of the Medical Defendants knew that their responses to his complaints were insufficient to mitigate a risk of harm. Plaintiff might argue that Defendants disregarded the risk posed by his medical needs by refusing to provide him with his desired course of treatment. But even if Hall's foot pain constituted a substantial risk to his health or safety, the Medical Defendants still may not be liable if they responded reasonably under the circumstances. Farmer, 511 U.S. at 843. There is nothing to indicate that any of the Medical Defendants, in responding to Hall's concerns, recognized that their actions were insufficient to mitigate any risk of harm. In fact, the very fact that he received a response each and every time he complained about his foot pain tends to

9

indicate quite the opposite—that they were concerned about this medical condition and interested in helping resolve it.

Defendant Ball, a Registered Nurse, saw the Plaintiff for a medical evaluation in March 2010. While she refused to prescribe him special orthopedic shoes, she did advise him that he could buy wider athletic shoes at the commissary, and provided him with medication. Plaintiff was again seen by Ball on September 22, 2010, whereupon she again provided him with pain medication. Plaintiff provides no evidence that Defendant Ball disregarded the risk posed by his medical needs. To the contrary, she evaluated him, provided treatment, and referred him to a medical doctor. This Court is a forum for remedying violations of constitutional rights, but it does not hold a medical degree, and is not in the business of substituting its own medical judgment for that of learned primary care providers. There is nothing in the record to indicate Defendant Ball did not act reasonably under the circumstances. Accordingly, Defendant Ball is entitled to a judgment as a matter of law.

Defendant Boyd, also a Registered Nurse, was the Defendant who responded to Hall's emergency grievance of July 19, 2010. In his July 19 emergency grievance, submitted at 6:30 p.m., Hall wrote: "I 'am [sic] Hurting in Serious pain And need medical Care Attention, pertaining to my chronic Condition bone disease in my foot." Pl.'s V.S. at 16. Boyd responded at 10:15 p.m. by telling Hall that his grievance did not meet the definition for an emergency because it was not life threatening. Similarly, Plaintiff's claim against Defendant Shelton, a Licensed Practical Nurse, appears to be based on several interactions with her. First, Plaintiff submitted an emergency grievance request on August 5, 2010 at 10:05 p.m. He advised that he was in pain from climbing up several flights of stairs. He also advised that he had previously had surgery, that his podiatric condition had been re-aggravated, and he needed attention right

away. At 2:00 pm, Defendant Shelton responded that he needed to sign up for sick call. The VDOC, which operates KMCC, defines emergency grievances as those that arise where "situations or conditions which may subject the offender to immediate risk of serious personal injury or irreparable harm." *See* Va. Dept. of Corrections, *Offender Grievance Procedure*, OP 866.1, Nov. 1, 2007, at ¶ VII.A. It is unclear to the Court whether Boyd or Shelton reviewed Hall's medical records or investigated further before responding to these emergency grievance requests. Nonetheless, the Plaintiff has not provided any evidence that Boyd or Shelton knew their responses were inadequate. It is entirely reasonable for an employee to think that foot pain does not constitute an immediate emergency, especially if the employee is familiar with a particular inmate's behavior and medical history.[5] The claims against Boyd and Shelton must also be dismissed.

Defendant Hawks, a Licensed Practical Nurse, saw Plaintiff Hall on September 22, 2010, and referred him to Defendant Ball. Defendant Hawks also saw Plaintiff Hall on October 11, 2010 when Hall complained of a headache. At the October 11 encounter, Hawks recommended that Hall attend sick call for treatment. At each turn, Hawks responded to the Plaintiff's complaints. There is nothing in the record to indicate that Hawks acted unreasonably under the circumstances. The claim against Hawks must likewise be dismissed.

Defendant Whited is a Registered Nurse and the Head Nurse at KMCC. Whited Aff. ¶ 2. Whited instructed the Plaintiff in the proper procedure on how to sign up for sick call.

---

[5] Defendant Whited, the Head Nurse at the facility, suggests that the medical staff was familiar with Mr. Hall's complaints: "Mr. Hall's emergency grievances were appropriately denied. His symptoms have been on-going for a number of years. The nursing staff adequately addressed his emergency grievances by stating that no emergency was presented and that he should report to sick call." Whited Aff. ¶ 19. The Court does not mean to suggest that a complaint of severe, chronic pain would *never* indicate an emergency. Under these circumstances, however, the Court finds that there is no evidence tending to show that Boyd and Shelton's responses evidenced deliberate indifference to Hall's claims.

11

Additionally, Whited responded to Hall's conclusory allegations that the KMCC was failing to provide him adequate medical care by instructing him he needed to sign up for sick call. These responses, without more, do not provide a scintilla of evidence that Defendant Whited acted with deliberate indifference. To the extent that Plaintiff's claim may be construed to allege liability against Whited for negligent supervision of his subordinates in his role as Head Nurse, that claim must also fail because negligent supervision is not cognizable under the Eighth Amendment.

Defendant Hopkins is a medical physician who is assigned to KMCC. Hopkins Aff. ¶¶ 1–2. Hopkins saw Plaintiff Hall on October 14, 2010. Hopkins concluded that Hall had chronic foot pain with minimal deformity. *Id.* ¶ 15. Hopkins then next saw Hall on December 14, 2010, two months later. At that time, Hopkins noted that Hall had a mild foot deformity, but it was not so severe as to warrant special orthopedic shoes or outside orthopedic consultation. *Id.* ¶ 17. In spite of these findings, Hopkins did not object to Hall being able to purchase special footwear from the commissary, which is frequently made available to inmates with foot problems. Hopkins Aff. ¶¶ 18–19. Although Hall has frequently been advised of his ability to purchase special footwear from the commissary, it is undisputed that he has not done so. Hawks Aff. ¶ 11. Here again, the Plaintiff has not provided any evidence that Hopkins knew his actions, specifically with regard to denying the Plaintiff a prescription for orthopedic shoes or a referral to an outside orthopedic specialist, were insufficient to mitigate a risk of harm to the Plaintiff. The claim against Hopkins must be dismissed.

### B. Medical Malpractice

To the extent that Hall's suit can be construed to sound in medical malpractice, it constitutes a state law claim. *See* Estelle, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). *See also* Sosebee v.

12

Murphy, 797 F.2d 179 (4th Cir. 1986) (mere negligence in medical diagnosis does not bring forth a federal claim). The Court today dismisses the Plaintiff's federal Section 1983 claim, and pursuant to 28 U.S.C. § 1367(c), declines to exercise supplemental jurisdiction over any state law claims that may arise out of the complained-of conduct. Accordingly, the Court need not reach the Medical Defendants' arguments for dismissal under the Virginia Medical Malpractice Act.

## IV. CONCLUSION

As stated at the outset, Hall's claim boils down to a disagreement between him and his medical providers on the appropriate course of treatment for chronic podiatric pain. But a claim concerning a disagreement between an inmate and medical personnel regarding the diagnosis and course of treatment does not take on a Constitutional dimension except in extraordinary circumstances. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985). As demonstrated above, no such circumstances exist here.

For the aforementioned reasons, Defendants Gerard T. Hopkins, Deborah Ball, Mavis Boyd, Carey Hawks, Wanda Shelton, and Eugene Whited's Motion for Summary Judgment (ECF No. 51) is **GRANTED**. To the extent that the Plaintiff's claims may sound in medical malpractice, the Court declines to exercise jurisdiction over those claims. Accordingly, the case against the Medical Defendants is **DISMISSED**. An appropriate order shall this day issue.

**ENTER:** this 9th day of January, 2012.

Senior United States District Judge